## AFFIDAVIT OF SHEILA MAGOON

I, Sheila Magoon, being duly sworn, hereby depose and state as follows:

1. I am a Special Agent with the Federal Bureau of Investigation (the "FBI") currently assigned to the Boston, Massachusetts Field Office. I have been a Special Agent with the FBI for approximately 11 years. I am currently assigned to the Boston Field Office's economic crimes squad, and have been assigned to that squad since approximately 2004. My investigative experience includes, but is not limited to, investigating securities fraud, mortgage fraud, and mail and wire fraud.

2. I make this affidavit in support of a criminal complaint charging Michael J. Cuomo ("CUOMO") and Kevin J. Mann, Sr. ("MANN") with conspiracy to commit mail fraud in violation of Title 18, United States Code, Section 371.

3. The facts stated herein are based on my own personal involvement with this investigation, as well as my review of documents and information provided by others assisting in this investigation and by witnesses. In submitting this affidavit, I have not included each and every fact known to me about this investigation. Rather, I have only submitted those facts which I believe are sufficient to establish probable cause.

### BACKGROUND ON INOFIN

4. Inofin, Incorporated ("Inofin") was a corporation organized under the laws of Massachusetts, with a principal place of business in Rockland, Massachusetts.

5. CUOMO, 52, is a resident of Plymouth, Massachusetts.

6. MANN, 64, is a resident of Marshfield, Massachusetts.

7. Inofin (and its predecessor entity) was established in 1994 by CUOMO and

1

MANN, who served as President and Chief Executive Officer of the company, respectively. Inofin effectively ended operations in February 2011, when certain creditors filed an involuntary Chapter 7 bankruptcy petition against the company.

8. Inofin, generally, purported to engage in the business of funding loans to purchasers of used automobiles who could not qualify for traditional financing. In order to conduct such business, Inofin maintained a motor vehicle finance company license in Massachusetts, through the Massachusetts Division of Banks, and similar licenses in other states.

9. Throughout Inofin's existence, CUOMO and MANN controlled Inofin, were responsible for the operations and management of Inofin, and oversaw numerous individuals who worked for the company. In addition, CUOMO and MANN were primarily responsible for raising capital to fund Inofin's operations. In order to raise capital, CUOMO and MANN (and Inofin employees whom they supervised) secured investments in Inofin from various individuals. These investments were made in the form of "loans" to Inofin for a set term, usually three years, and with a set annual interest rate. The investments were typically governed by a loan agreement and a promissory note between Inofin and the given investor.

## BACKGROUND ON RETIREMENT PLANS

10. Under Title 26 of the United States Code, individuals in the United States can invest in retirement plans, including, but not limited to, Individual Retirement Accounts ("IRAs"); Simplified Employee Pension IRAs ("SEP-IRAs"); and 401(k) Plans ("401(k)s").

11. Many retirement plans, including IRAs, SEP-IRAs and 401(k)s, allow individuals to contribute a portion of their income to the plan without that income being subject to income taxes until those monies are removed from such retirement plans. Additionally, interest accrued

in such retirement plans is not subject to income taxes until it is removed. In addition to income taxes, removal of monies from such retirement plans prior to a specified age set forth by Title 26 of the United States Code may result in penalties levied by the Internal Revenue Service (the "IRS") for an early withdrawal.

12. Monies invested in retirement plans, including, but not limited to, IRAs, SEP-IRAs and 401(k)s, are held by entities that serve as custodians, or trustees, of those monies.

13. The Department of the Treasury sets forth regulations in Title 26 of the United States Code as to what entities can serve as custodians, or trustees, for retirement plans, including, but not limited to, IRAs, SEP-IRAs and 401(k)s. According to those regulations, banks can serve as custodians for such retirement plans. In addition, Department of the Treasury regulations set forth in in Title 26 of the United States Code and in the Code of Federal Regulations permit other entities to serve as custodians, but only after undertaking an extensive application process for the entity to be approved by the Department of the Treasury as a "Nonbank Trustee" ("NBT"). An entity that has not applied for approval to, and received approval from, the Department of the Treasury cannot serve as an NBT of retirement plans.

14. Individuals can transfer retirement plans, including, but not limited to, IRAs, SEP-IRAs and 401(k)s, and the monies held therein, from one authorized custodian to another without triggering the payment of income taxes on the transferred monies, or any early withdrawal penalties. Such a procedure is commonly referred to as a "rollover." However, an individual generally cannot perform a rollover to an entity that is not authorized to be a custodian of a retirement plan without triggering the payment of income taxes on the transferred monies and any applicable early withdrawal penalties.

## THE PURPOSE OF THE CONSPIRACY

15. From approximately 1998 and continuing through February 2011, CUOMO and MANN conspired with one another to devise a scheme and artifice to defraud, and to obtain money by means of materially false and fraudulent pretenses, representations and promises with regard to securing investments from individuals of monies held in retirement plans, including, but not limited to, IRAs, SEP-IRAs, and 401(k)s.

16. It was part of the conspiracy that CUOMO and MANN defrauded investors, and enriched themselves, by soliciting investors to invest in Inofin based on deceptive acts, false and fraudulent statements and misrepresentations of material facts, and omissions of material facts necessary in order to make the statements made not misleading. These deceptive acts and false statements included, but were not limited to, misrepresenting to investors Inofin's ability to serve as a custodian of retirement plans, including, but not limited to, IRAs, SEP-IRAs, and 401(k)s.

## MANNER AND MEANS OF THE CONSPIRACY

17. CUOMO and MANN at no time applied for approval to, or received approval from, the Department of the Treasury for Inofin to serve as an NBT. Nor was Inofin ever a bank.

18. Nonetheless, beginning in or about 1998, and continuing through February 2011, CUOMO and MANN established and maintained investor accounts at Inofin that held monies that were rolled over to Inofin from investor retirement plans, including, but not limited to, IRAs, SEP-IRAs, and 401(k)s.

19. In doing so, CUOMO and MANN falsely represented, or caused Inofin employees that they supervised to falsely represent, to investors that Inofin was authorized to

serve as a custodian of monies held in such retirement plans even though CUOMO and MANN well knew that Inofin had no such authorization.

20.     In addition, CUOMO and MANN oversaw the provision of written materials to investors which falsely asserted that Inofin could accept transfers of, among other things, IRA and 401(k) accounts.

21.     As a result of CUOMO's and MANN's false representations that Inofin could serve as a custodian of monies held in such retirement plans, CUOMO and MANN gained access to a source of investor monies that they would not otherwise have had access to, thereby enriching themselves and their company. In total, due to CUOMO's and MANN's false representations, investors collectively invested more than $11 million of retirement plan monies in Inofin.

22.     From approximately 1998 through at least February 2011, CUOMO and MANN took a number of overt acts, in the District of Massachusetts and elsewhere, in furtherance of their conspiracy, and to effect its objects, including, but not limited to, the following:

    a.     On or about December 27, 2006, an existing investor in Inofin ("Victim 1") informed MANN that he was considering an additional investment in Inofin, which would be funded from monies held in Victim 1's IRA. Victim 1 therefore asked MANN to confirm that Inofin could serve as a custodian for IRA monies. On or about December 28, 2006, MANN falsely stated to Victim 1, via e-mail, that "Inofin is a qualified depository for IRA funds." As a result of this false representation that Inofin was a qualified depository for IRA funds, as well as similar oral misrepresentations by MANN, Victim 1 transferred, over time, approximately $1.7 million of IRA monies from an

existing retirement account into an ostensible IRA account at Inofin.

  b. In early 2009, CUOMO discussed a potential investment in Inofin with an acquaintance of his ("Victim 2"). During their discussions, CUOMO falsely represented to Victim 2 that Inofin could serve as custodian for Victim 2's SEP-IRA account. As a result of this false representation, on or about April 20, 2009, Victim 2 effected a transfer of approximately $22,859.36 from an existing retirement account into an ostensible SEP-IRA account at Inofin. On or about February 17, 2010, Victim 2, still relying on CUOMO's false representation that Inofin was qualified to serve as a custodian of his SEP-IRA account delivered to Inofin a check in the amount of $4,000 that was deposited by Inofin into its bank account at Bank of America, as a contribution to Victim 2's ostensible SEP-IRA account with Inofin.

  c. In or about mid-2009, a prospective investor ("Victim 3") inquired about the possibility of transferring funds held in an IRA to Inofin. Inofin employee J.G., whose job it was to interact with investors and potential investors, and who was falsely informed by CUOMO that Inofin could serve as custodian for IRA funds, falsely represented to Victim 3 that Inofin could serve as a custodian for an IRA account. As a result of this false representation, on various dates from July 2009 through February 2010, Victim 3 effected a transfer of a total of approximately $600,000 from an existing retirement account held at Mercer Securities into an ostensible IRA account at Inofin. In February 2010 alone, Victim 3 transferred approximately $200,000 from his existing retirement account to Inofin, to be held in Victim 3's ostensible IRA account at Inofin.

    d.  In order to help effect Victim 3's final transfer of retirement funds to Inofin, on or about February 11, 2010, J.G., acting at CUOMO's and MANN's direction, sent a letter, via Federal Express, to Mercer Securities, the custodian of Victim 4's IRA. That letter falsely represented that Inofin would serve as the "Successor Custodian of the qualified IRA plan" held on behalf of Victim 3. Subsequently, Mercer Securities honored Victim 4's request to transfer approximately $200,000 from his existing retirement account to Inofin, to be held in Victim 3's ostensible IRA account at Inofin.

    e.  In or about early 2010, a prospective investor ("Victim 4") inquired about the possibility of transferring funds held in an IRA to Inofin. J.G., acting at CUOMO's and MANN's direction, falsely represented to Victim 4 that Inofin could serve as a custodian for an IRA account. As a result of this false representation, Victim 4 directed his previous IRA custodian to send to him approximately $73,599.05, which he intended to transfer to Inofin as an IRA rollover. On or about April 28, 2010, Victim 4's previous IRA custodian sent Victim 4 a check to his home in Massachusetts in that amount, which Victim 4 subsequently turned over to Inofin for investment.

## CONCLUSION

23. Based on the foregoing, and on my knowledge, training, and experience, I have probable cause to believe that CUOMO and MANN conspired to commit mail fraud in violation of Title 18, United States Code, Section 371.

I hereby certify that the foregoing is true and correct under the pains and penalties of perjury. Executed this 30th day of January, 2015.

*Sheila Magoon*
Sheila Magoon
Special Agent
Federal Bureau of Investigation

SUBSCRIBED and SWORN to before me
this 30th day of January, 2015.

*Marianne B. Bowler, USMJ*
Honorable Marianne B. Bowler
UNITED STATES MAGISTRATE JUDGE

8