UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MICHAEL J. CUOMO,<br>KEVIN J. MANN, SR.<br><br>Defendants. | CRIMINAL NO. 15cr10070<br><br>VIOLATIONS:<br><br>18 U.S.C. § 1349 (Conspiracy)<br><br>18 U.S.C. § 1341 (Mail Fraud)<br><br>18 U.S.C. § 1343 (Wire Fraud)<br><br>18 U.S.C. § 981 (Criminal Forfeiture)<br><br>28 U.S.C. § 2461 (Criminal Forfeiture) |

## INDICTMENT

THE GRAND JURY CHARGES:

## INTRODUCTION

At all times relevant to this Indictment,

1. Defendant MICHAEL J. CUOMO was an individual who resided in Plymouth, Massachusetts and was a principal and the President of Inofin, Incorporated ("Inofin").

2. Defendant KEVIN J. MANN, SR. was an individual who resided in Marshfield, Massachusetts and was a principal and the Chief Executive Officer of Inofin.

3. Inofin was a corporation organized under the laws of Massachusetts, with a principal place of business in Rockland, Massachusetts.

4. Inofin, generally, purported to engage in the business of funding loans to purchasers of used automobiles who could not qualify for traditional financing. More specifically, Inofin's purported business model was to purchase loan contracts with such

purchasers from retail automobile dealers, and then service the loans and collect the income streams from those loans. In order to conduct such business, Inofin maintained a motor vehicle finance company license in Massachusetts, through the Massachusetts Division of Banks, and similar licenses in other states.

5. CUOMO and MANN were responsible for raising capital to fund Inofin's operations.

6. In order to raise capital for Inofin's operations, CUOMO and MANN (and others acting at their behest) secured investments in Inofin from various individuals. These investments were made in the form of "loans" to Inofin for a set term, usually three years, and with a set annual interest rate. The investments were typically governed by a loan agreement and a promissory note between Inofin and the given investor.

7. For each new investment by an investor into Inofin, CUOMO and MANN directed that an individual account be established at Inofin. While these investor accounts were individually designated in Inofin's internal books and records, in actuality, investor monies were commingled, rather than being placed in individual bank accounts.

8. CUOMO and MANN granted certain Inofin investors pledges of collateral with regard to their investments. The collateral pledged to these investors was in the form of specific car loans that Inofin had financed, as identified by the name of the car purchaser and the title of the car. The pledges of collateral were governed by a security agreement between Inofin and the investor, which typically represented that Inofin would not transfer the collateral pledged to that investor outside of the ordinary course of Inofin's business. Certain Inofin investors received periodic reports specifically indicating which loans financed by Inofin had been assigned to them as collateral.

9. From approximately March 1994 through February 2011, CUOMO and MANN controlled Inofin (and its predecessor entity), were responsible for the operations and management of Inofin, and oversaw numerous individuals who worked for Inofin.

10. In or about September 2009, the United States Securities and Exchange Commission (the "SEC") informed CUOMO and MANN that it had commenced an investigation into Inofin.

11. On or about February 9, 2011, an involuntary Chapter 7 bankruptcy petition was filed against Inofin in the United States Bankruptcy Court for the District of Massachusetts, thereby effectively ending Inofin's operations.

*Retirement Plans Generally*

12. Under Title 26 of the United States Code, individuals in the United States can invest in retirement plans, including, but not limited to, Individual Retirement Accounts ("IRAs"); Simplified Employee Pension IRAs ("SEP-IRAs"); and 401(k) Plans ("401(k)s").

13. Many retirement plans, including IRAs, SEP-IRAs and 401(k)s, allow individuals to contribute a portion of their income to the plan without that income being subject to income taxes until those monies are removed from such retirement plans. Additionally, interest accrued in such retirement plans is not subject to income taxes until it is removed from such retirement plans. In addition, removal of monies from such retirement plans prior to a specified age set forth by Title 26 of the United States Code and applicable regulations may result in penalties levied by the Internal Revenue Service (the "IRS") for an early withdrawal.

14. Monies invested in retirement plans, including, but not limited to, IRAs, SEP-IRAs and 401(k)s, are held by entities that serve as custodians, or trustees, of those monies.

15. The Department of the Treasury sets forth regulations in Title 26 of the United States Code as to what entities can serve as custodians, or trustees, for retirement plans, including, but not limited to, IRAs, SEP-IRAs and 401(k)s. According to those regulations, banks can serve as custodians for such retirement plans. In addition, Department of the Treasury regulations set forth in Title 26 of the United States Code and in the Code of Federal Regulations permit other entities to serve as custodians, or trustees, but only after undertaking an extensive application process for the entity to be approved by the Department of the Treasury as a Nonbank Trustee ("NBT").

16. An entity that is not a bank and that has not applied for approval to, and received approval from, the Department of the Treasury cannot serve as an NBT of retirement plans, including, but not limited to, IRAs, SEP-IRAs and 401(k)s.

17. Individuals can transfer monies held in retirement plans, including, but not limited to, IRAs, SEP-IRAs and 401(k)s, and the monies held therein, from one authorized custodian to another without triggering the payment of income taxes on the transferred monies, or any early withdrawal penalties. Such a procedure is commonly referred to as a "rollover." However, an individual cannot perform a rollover to an entity that is not authorized to be a custodian of a retirement plan without triggering the payment of income taxes on the transferred monies and any applicable early withdrawal penalties.

## SCHEME TO DEFRAUD

18. As set forth below, from approximately 1998 and continuing through February 2011, CUOMO and MANN devised and intended to devise a scheme and artifice to defraud, and for obtaining money by means of materially false and fraudulent pretenses, representations and

promises with regard to securing investments from individuals of monies held in retirement plans, including, but not limited to, IRAs, SEP-IRAs, and 401(k)s.

19. It was part of the scheme and artifice to defraud that CUOMO and MANN defrauded investors, and enriched themselves, by soliciting investors to invest in Inofin based on deceptive acts, false and fraudulent statements and misrepresentations of material facts, and omissions of material facts necessary in order to make the statements made not misleading. These deceptive acts and false statements included, but were not limited to, misrepresenting Inofin's ability to serve as a custodian which could accept rollovers of monies held in retirement plans, including, but not limited to, IRAs, SEP-IRAs, and 401(k)s.

## MANNER AND MEANS OF THE FRAUD

20. CUOMO and MANN at no time applied for approval to, or received approval from, the Department of the Treasury for Inofin to serve as an NBT. Nor was Inofin ever a bank.

21. Beginning in or about 1998 at the latest, and continuing through February 2011, CUOMO and MANN established and maintained investor accounts at Inofin that held monies that were rolled over to Inofin from investor retirement plans (and, on occasion, established new retirement plans at Inofin). Such retirement plans included, but were not limited to, IRAs, SEP-IRAs, and 401(k)s.

22. In doing so, CUOMO and MANN falsely represented, or caused Inofin employees to falsely represent, to investors that Inofin was authorized to serve as a custodian of monies held in such retirement plans even though CUOMO and MANN well knew that Inofin had no such authorization.

23. In addition, CUOMO and MANN oversaw the provision of written materials to investors which falsely asserted that Inofin could accept transfers of monies held in, among other things, IRA and 401(k) accounts.

24. As a result of CUOMO's and MANN's false representations that Inofin could serve as a custodian of monies held in such retirement plans, CUOMO and MANN gained access to a source of investor monies that they would not otherwise have had access to, thereby enriching themselves and their company.

25. In total, investors collectively invested more than $11 million of retirement plan monies in Inofin.

26. As a further inducement to cause some of these investors to invest retirement plan monies in Inofin, CUOMO and MANN pledged collateral, in the form of specific car loans, to certain of these investors as security for their investment of retirement monies in Inofin. However, beginning in at least early 2008, Inofin, at CUOMO and MANN's direction, and unbeknownst to investors, began to sell batches of car loans that it had financed, including loans that had been pledged as collateral to specific investors, to various third parties. This meant that, at any given moment, these investors had fewer loans pledged to them as collateral than CUOMO and MANN had led them to believe.

27. From approximately 1998 through at least February 2011, CUOMO and MANN took a number of actions in furtherance of their scheme to defraud, including, but not limited to, the following:

    a. On or about December 27, 2006, an existing investor in Inofin ("Victim 1"), whose name is known to the grand jury, informed MANN that he was considering an additional investment in Inofin, which would be funded from monies held in Victim 1's

IRA. Victim 1 therefore asked MANN to confirm that Inofin could serve as a custodian for IRA monies. On or about December 28, 2006, MANN falsely stated to Victim 1, via e-mail, that "Inofin is a qualified depository for IRA funds." As a result of this false representation that Inofin was a qualified depository for IRA funds, as well as similar oral misrepresentations by MANN, Victim 1 transferred, over time, approximately $1.7 million of IRA monies from an existing retirement account into an ostensible IRA account at Inofin.

  b. In or about December 2008, a prospective investor ("Victim 2"), whose name is known to the grand jury, inquired about the possibility of holding a 401(k) account at Inofin. Inofin employee J.G., whose name is known to the grand jury, acting at CUOMO's and MANN's direction, falsely represented to Victim 2 that Inofin could serve as a custodian for a 401(k) account. As a result of this false representation, on or about December 22, 2008, Victim 2 invested approximately $5000 into an ostensible newly established 401(k) account at Inofin.

  c. In or about February 2009, Victim 2 inquired about the possibility of transferring, or rolling over, retirement funds held in a pension plan to Inofin. J.G., acting at CUOMO's and MANN's direction, falsely represented to Victim 2 that Inofin could serve as custodian for those funds. As a result of this false representation, on or about March 23, 2009, Victim 2 effected a transfer of approximately $76,019.79 from an existing retirement account into an ostensible IRA account at Inofin.

  d. In or about January 2010, Victim 2, who had not been informed by CUOMO, MANN, or any other Inofin employee of the SEC's ongoing investigation into Inofin, inquired about the possibility of transferring, or rolling over, a SEP-IRA to Inofin.

J.G., acting at CUOMO's and MANN's direction, falsely represented to Victim 2 that Inofin could serve as custodian for those funds. As a result of this false representation, Victim 2 effected a transfer of approximately $17,589.31 from an existing retirement account into an ostensible SEP-IRA account at Inofin by having her previous IRA custodian send a check in that amount to Inofin, which was received by Inofin on or about February 8, 2010.

  e. In early 2009, CUOMO discussed a potential investment in Inofin with an acquaintance of his ("Victim 3"), whose name is known to the grand jury. During their discussions, CUOMO falsely represented to Victim 3 that Inofin could serve as custodian for monies held in Victim 3's existing SEP-IRA account. As a result of this false representation, on or about April 20, 2009, Victim 3 effected a transfer of approximately $22,859.36 from an existing retirement account into an ostensible SEP-IRA account at Inofin. On or about February 17, 2010, Victim 3, still relying on CUOMO's false representation that Inofin was qualified to serve as a custodian of his SEP-IRA account, and having not been informed by CUOMO, MANN, or any other Inofin employee of the SEC's ongoing investigation into Inofin, delivered to Inofin a check in the amount of $4,000 drawn from his account at Citizens Bank, that was deposited by Inofin into its bank account at Bank of America, as a contribution to Victim 3's ostensible SEP-IRA account with Inofin.

  f. In or about mid-2009, a prospective investor ("Victim 4"), whose name is known to the grand jury, inquired about the possibility of transferring, or rolling over, funds held in an IRA to Inofin. J.G., acting at CUOMO's and MANN's direction, falsely represented to Victim 4 that Inofin could serve as a custodian for those funds. As a result

of this false representation, on various dates from July 2009 through February 2010, Victim 4 effected a transfer of a total of approximately $600,000 from an existing retirement account held at Mercer Securities into an ostensible IRA account at Inofin. In February 2010 alone, Victim 4, who had not been informed by CUOMO, MANN, or any other Inofin employee of the SEC's ongoing investigation into Inofin, transferred approximately $200,000 from his existing retirement account to Inofin, to be held in Victim 4's ostensible IRA account at Inofin.

   g. In order to help effect Victim 4's final transfer of retirement funds to Inofin, on or about February 11, 2010, J.G., acting at CUOMO's and MANN's direction, sent a letter, via Federal Express, to Mercer Securities, the custodian of Victim 4's IRA. That letter falsely represented that Inofin would serve as the "Successor Custodian of the qualified IRA plan" held on behalf of Victim 4. Subsequently, Mercer Securities honored Victim 4's request to transfer approximately $200,000 from his existing retirement account to Inofin, to be held in Victim 4's ostensible IRA account at Inofin.

   h. In or about early 2010, a prospective investor ("Victim 5"), whose name is known to the grand jury, inquired about the possibility of transferring, or rolling over, funds held in an IRA to Inofin. Victim 5 was not informed at that time by CUOMO, MANN, or any other Inofin employee of the SEC's ongoing investigation into Inofin. Instead, J.G., acting at CUOMO's and MANN's direction, falsely represented to Victim 5 that Inofin could serve as a custodian for those funds. As a result of this false representation, Victim 5 directed his previous IRA custodian to send to him approximately $73,599.05, which he intended to transfer to Inofin as an IRA rollover. On or about April 28, 2010, Victim 5's previous IRA custodian sent Victim 5 a check in

that amount, which Victim 5 subsequently turned over to Inofin to be deposited in an ostensible IRA account at Inofin.

## COUNT ONE

### (Conspiracy to Commit Mail and Wire Fraud—18 U.S.C. § 1349)

28.  The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 27 of this Indictment, and further charges that:

29.  From in or about 1998, at the latest, and continuing through at least February 2011, both dates being approximate and inclusive, within the District of Massachusetts and elsewhere,

**MICHAEL J. CUOMO and
KEVIN J. MANN, SR.**

defendants herein, together with others known and unknown to the Grand Jury, knowingly conspired to commit: (1) mail fraud in violation of Title 18, United States Code, Section 1341, to wit, having devised and intending to devise a scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations and promises, for the purpose of executing such scheme and artifice and attempting to do so, knowingly causing a thing to be delivered by the United States Postal Service and by private and commercial interstate carrier according to the directions thereon and depositing and causing to be deposited a thing to be sent and delivered by the United States Postal Service and by private and commercial interstate carrier, and took and received therefrom such thing; and (2) wire fraud in violation of Title 18, United States Code, Section 1343, to wit, having devised and intending to devise a scheme and artifice to defraud and for obtaining money or property by means of materially false and fraudulent pretenses, representations, and promises, transmitting and causing

10

to be transmitted by wire communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice.

All in violation of Title 18, United States Code, Section 1349.

## COUNT TWO

### (Mail Fraud—18 U.S.C. §§ 1341, 2)

30. The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 27 of this Indictment, and further charges that:

31. On or about February 8, 2010, within the District of Massachusetts and elsewhere,

**MICHAEL J. CUOMO and
KEVIN J. MANN, SR.**

having devised and intending to devise a scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations and promises, for the purpose of executing such scheme and artifice and attempting to do so, did knowingly cause a thing to be delivered by the United States Postal Service and private and commercial interstate carrier according to the directions thereon and deposited and caused to be deposited a thing to be sent and delivered by the United States Postal Service and private and commercial interstate carrier, and took and received therefrom, to wit, a delivery of a check in the amount of $17,589.31, representing retirement funds of Victim 2, to Inofin in Massachusetts.

All in violation of Title 18, United States Code, Sections 1341 and 2.

## COUNT THREE

### (Wire Fraud—18 U.S.C. §§ 1343, 2)

32. The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 27 of this Indictment, and further charges that:

33. On or about February 17, 2010, within the District of Massachusetts and elsewhere,

**MICHAEL J. CUOMO and
KEVIN J. MANN, SR.**

having devised and intending to devise a scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations and promises, for the purpose of executing such scheme and artifice, did knowingly transmit and cause to be transmitted by means of by wire communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, to wit, an electronic signal from Massachusetts to points outside of Massachusetts concerning the transfer of $4,000 from Victim 3's Citizen Bank account to Inofin.

All in violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT FOUR

### (Mail Fraud—18 U.S.C. §§ 1341, 2)

34. The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 27 of this Indictment, and further charges that:

35. On or about February 11, 2010, within the District of Massachusetts and elsewhere,

**MICHAEL J. CUOMO and
KEVIN J. MANN, SR.**

having devised and intending to devise a scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations and promises, for the purpose of executing such scheme and artifice and attempting to do so, did knowingly cause a thing to be delivered by the United States Postal Service and private and commercial interstate carrier according to the directions thereon and deposited and caused to be deposited a thing to be sent and delivered by the United States Postal Service and private and commercial interstate carrier, and took and received therefrom, a letter via Federal Express from Massachusetts to Mercer Securities, the custodian of Victim 4's IRA.

All in violation of Title 18, United States Code, Sections 1341 and 2.

## COUNT FIVE

### (Mail Fraud—18 U.S.C. §§ 1341, 2)

36. The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 27 of this Indictment, and further charges that:

37. On or about April 28, 2010, within the District of Massachusetts and elsewhere,

**MICHAEL J. CUOMO and
KEVIN J. MANN, SR.**

having devised and intending to devise a scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations and promises, for the purpose of executing such scheme and artifice and attempting to do so, did knowingly cause a thing to be delivered by the United States Postal Service and private and commercial interstate carrier according to the directions thereon and deposited and caused to be deposited a thing to be sent and delivered by the United States Postal Service and private and commercial interstate carrier, and took and received therefrom, to wit, a check sent from Victim 5's previous IRA custodian and delivered to Victim 5 in Massachusetts.

All in violation of Title 18, United States Code, Sections 1341 and 2.

## FORFEITURE ALLEGATION

**(18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461)**

THE GRAND JURY FURTHER CHARGES:

38. The allegations set forth in paragraphs 1 through 37 of this Indictment are re-alleged and incorporated herein by reference.

39. Upon conviction of one or more of the offenses alleged in Counts One through Six of the Indictment, the defendants,

**MICHAEL J. CUOMO and
KEVIN MANN, SR.**

shall forfeit to the United States, jointly and severally, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to such violations, including but not limited to the sum of at least $11,264,113.07, which represents the proceeds of the offenses.

40. If any of the property described in paragraph 37, above, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

   e. has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c), to seek forfeiture of any other property of the defendant up to the value of the property described in paragraph 39.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

A TRUE BILL

                         FOREPERSON OF THE GRAND JURY

_____
VASSILI THOMADAKIS
ASSISTANT U.S. ATTORNEY


  DISTRICT OF MASSACHUSETTS; April 2, 2015

  Returned into the District Court by the Grand Jurors and filed.

                   DEPUTY CLERK  4/2/2015
                           @ 11:50 AM